

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 0933 | **DATE** | 2/27/2003 |
| **CASE TITLE** | United States of America ex rel Marcus Williams-El vs. Kenneth R. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner's Writ of Habeas Corpus

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, Marcus Williams-El is DENIED habeas corpus relief on his remaining claim of ineffective assistance of counsel (claim 6) [1-1] All other motions are moot and terminated. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 0 4 2003 | |
| | Notified counsel by telephone. | | date docketed | 51 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| klb (lc) | courtroom deputy's initials | | | mailing deputy initials |

**DOCKETED**

MAR 0 4 2003

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. MARCUS WILLIAMS, | ) ) ) |
| Petitioner, | ) ) |
| v. | No. 99 C 0933 ) ) HONORABLE DAVID H. COAR |
| KENNETH R. BRILEY, | ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Marcus Williams-El ("petitioner" or "Williams"El"), filed a habeas corpus petition in this Court pursuant to 28 U.S.C. § 2254. On September 3, 2002, this Court issued a Memorandum Opinion and Order denying habeas relief on grounds 1-5 and ground 7 of the petition but granting an evidentiary hearing on ground 6. On December 19, 2002, this Court conducted an evidentiary hearing to determine whether petitioner was denied effective assistance of counsel when his attorney failed to interview a potentially exculpatory witness, Marvin Turner. For the reasons set forth below, this Court denies habeas relief on petitioner's ineffective assistance of counsel claim.

### Factual Background

The facts and procedural history are set forth in this Court's opinion of September 3, 2002 and will only be repeated here to the extent necessary to preserve coherence. The facts relevant to the ineffective assistance of counsel claim may be summarized as follows. The double murder in this case occurred in a Chicago alley at approximately 8:45 p.m. on August 17,

-1-

1990. Four witnesses testified that they each saw petitioner ride into an alley on a bicycle, heard gunshots, and then saw petitioner ride from the alley. A latent fingerprint which matched petitioner's left ring finger was found on the driver's door of the car in which the victims had been sitting. According to a police report prepared on the night of the shooting, a resident of the area, Marvin Turner, heard the shots and then saw an unknown male riding a ten-speed bike from the scene. Turner described the bike-rider as being a male black, 18-21 years old, approximately 5'10" tall, 160 pounds, with a thick black hairdo -possibly a jheri-curl - and wearing a loose fitting white shirt, black knee length shorts and white gym shoes. This differed from the descriptions given by the four persons who testified that they saw petitioner enter and leave the alley. Those witnesses described the person on the bike as a black male, wearing dark clothes including long pants and with a hair cut known as a "high-fade" or "pump." Two of them testified that the person was not wearing shorts. These witnesses variously described the bike-rider as being from thin to medium build and from 5' 5" to 6' tall. Two testified that the rider was about 17 or 18 years old. Petitioner asserts that trial counsel rendered ineffective assistance when they did not interview Turner based upon the differences between Turner's description and those of the other four witnesses.

At the evidentiary hearing before this Court, Kevin Peters testified that he was the lead defense counsel in petitioner's case. Peters was aware of Turner's statement to the police officer through his reading of the officer's report. Neither Peters nor his second chair, Mark Kusatzky, nor any investigator from the Public Defender's office interviewed Marvin Turner. Peters testified that he went to the scene of the shooting two or three times. Kusatzky also went to the scene at least once. Peters testified that after viewing the scene he believed that Turner could not

have seen what he claimed. Peters was aware of Turner's address. Peters testified that his investigation of the area convinced him that Turner could not have seen either the actual shooting or the bike-rider's escape. This was due to Peters' belief that Turner's view was blocked by garages, a car-port, parked vehicles, utility poles, wires and other obstructions. In addition, Turner's porch was many yards away from the scene of the shooting. Peters also testified that he did not interview Turner because at the live line-up Turner tentatively identified petitioner as the man he saw riding the bicycle. Peters explained that he did not want to risk calling Turner as a witness because he was afraid the tentative identification might turn into a positive identification or otherwise bolster the other identifications at trial. Peters attempted to get the description differences before the jury without putting Turner on the stand, where he would be subject to cross-examination and possible impeachment. Turner did not testify at the evidentiary hearing in connection with this petition.

## Discussion

Petitioner raised the ineffectiveness of his trial counsel for the first time on habeas review. To excuse the procedural default, plaintiff argued that his appellate counsel was ineffective for failing to raise the issue on direct review. Petitioner had the same counsel on trial and on appeal. Thus, the question was whether petitioner was prejudiced by appellate counsel's failure to raise trial counsel's ineffectiveness. Such prejudice could be shown if ineffective assistance of trial counsel was a meritorious issue for appeal. This Court held an evidentiary hearing to determine if trial counsel's failure to interview Turner was defective performance, which would in turn be a showing of prejudice that is needed to excuse the procedural default.

-3-

The two pronged test set forth in Strickland v. Washington for a finding of ineffective assistance of counsel requires that the petitioner show: (1) that counsel's performance failed to meet an objective standard of reasonableness, and (2) he was prejudiced by counsel's errors such that there is a reasonable probability that, but for those errors, the result of the proceedings would have been different. 466 U.S. 668, 687-94, 104 S.Ct. 2052 (1984). Review of counsel's performance must be highly deferential so as to avoid the distorting effects of hindsight. Id. at 689. The Court must judge the reasonableness of counsel's challenged conduct in light of all the facts and circumstances of the particular case, viewed as of the time of counsel's conduct. Id. at 690. Specifically, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on the investigation." Strickland, 466 U.S. at 690-91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. With regard to the second prong, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In making this determination, a court must consider the totality of the evidence before the judge or jury, and the effect of the alleged error on each piece of evidence. Id. at 694-95.

The Seventh Circuit has held that "a habeas court cannot even begin to apply Strickland's standards to ... a claim [of failing to conduct a proper pretrial investigation] unless and until petitioner makes a 'specific, affirmative showing as to what the missing evidence or testimony would have been.' " U.S. ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir.1991), quoting United States ex rel. McCall v. O'Grady, 908 F.2d 170, 173 (7th Cir.1990). Thus, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by

the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir.1991)(footnotes omitted).

In this case, Turner did not testify at the evidentiary hearing. Thus, all the Court has to go on is the police report where Turner gave a description of the perpetrator that differed from the description given by the other witnesses. Despite that description, however, Turner tentatively identified petitioner as the person he saw riding the bike. Even assuming, arguendo, that counsel was deficient for failing to at least interview Turner before deciding not to put him on the stand, it is difficult to see how petitioner was prejudiced. The evidence at trial was strong. Four witnesses positively identified petitioner as the person they saw on the bike. Petitioner's fingerprint was found on the door of the car in which the victims had been riding. The victims were petitioner's ex-girlfriend and her new boyfriend. Petitioner had previously gone to the female victim's house, beaten her and attempted to kidnap her. After the shooting, but before the female victim eventually died, petitioner called the hospital several times asking about the victim's condition and whether she had identified her assailant.

Turner's possible testimony does not in any way affect the testimony of petitioner's motive, his past history of violence with respect to the female victim, his phone calls, or the fact that his fingerprint was on the vehicle. Turner's possible testimony affects only the identification testimony of the other four eyewitnesses. Arguably, the opportunity of those four to identify the bike-rider was better than that of Turner because they saw the rider twice from the same level and from less than ten feet away. Turner, on the other hand, saw the biker only once, from a downward angle and from many yards away. Moreover, Turner himself tentatively identified

petitioner as the bike-rider. Thus, although he disagreed about what the rider was wearing, his overall impression of the person was that he looked like petitioner. Thus, there is simply no reasonable likelihood that petitioner would have been acquitted had Turner testified in accordance with his report to the police. In fact, it is possible that Peters' fears would have come to fruition. Turner might have positively identified petitioner from the stand. More importantly, the government may have been able to impeach Turner regarding his opportunity to view the rider in ways not possible because counsel chose not to put him on the stand. Petitioner's counsel actually got Turner's disparate identification before the jury in the first trial without putting him on the stand. That resulted in a hung jury in the first trial. The jury was hung 11 to 1 for conviction. Petitioner has failed in his burden to show that Turner's testimony would have been helpful to his case because petitioner has presented no evidence regarding the nature of any possible additional testimony by Turner. Thus, petitioner is unable to show that his ineffective assistance of trial counsel claim was meritorious. Accordingly, the procedural default is not excused. Habeas relief is denied.

## Conclusion

For the foregoing reasons, petitioner is DENIED habeas corpus relief on his remaining claim of ineffective assistance of trial counsel.

Enter:

_____
David H. Coar
United States District Judge

Dated: February 27, 2003